## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
### Norfolk Division

**UNITED STATES OF AMERICA,**

    **v.**                                 **CRIMINAL NO. 2:11cr55**

**VASILIOS DOURDOUMIS,**

           **Defendant.**

### OPINION

This matter comes before the court on Defendant's "Motion to Reduce Sentence due to Extraordinary and Compelling reasons FSA-2018 (603), 18 U.S.C. 3582(c)(1)(A)" ("Motion"), ECF No. 108, filed pro se on July 22, 2020. For the reasons explained below, Defendant's Motion is **DENIED**.

### I. BACKGROUND

On June 9, 2011, Defendant pleaded guilty to Counts Four and Five of a five (5) count Indictment. ECF No. 14. Count Four charged Defendant with Distribution and Possession with Intent to Distribute Cocaine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) and 18 U.S.C. § 2. ECF No. 1 at 2. Count Five charged him with Felon in Possession of a Firearm, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), and 2. ECF No. 1 at 3. On September 27, 2011, the court sentenced Defendant to 156 months imprisonment, along with a 3-year term of supervised release. ECF No. 29 at 1-3. The Fourth Circuit dismissed Defendant's direct appeal as untimely. See ECF No. 54. Defendant subsequently filed several

collateral attacks and requests for sentence reductions, which were likewise dismissed or denied.

On July 22, 2020, Defendant filed the instant Motion, pro se. ECF No. 108. On August 28, 2020, the court entered an Order denying Defendant's Motion, citing Defendant's failure to exhaust his administrative remedies as required by 18 U.S.C. § 3582(c)(1)(A). ECF No. 114 at 2. Defendant then filed a Motion for Reconsideration on September 8, 2020, ECF No. 115, which the court denied in an Order entered on September 9, 2020, ECF No. 116.

Defendant appealed both of these Orders on September 17, 2020. ECF No. 117. Before the United States Court of Appeals for the Fourth Circuit could address Defendant's appeal, Defendant filed his Second Motion for Reconsideration on January 25, 2021. ECF No. 122.[1] In an Order entered on February 5, 2021, the court stayed Defendant's Second Motion for Reconsideration pending the resolution of his appeal. ECF No. 124 at 2.[2]

In an Opinion dated November 23, 2021, the United States Court of Appeals for the Fourth Circuit vacated the court's Order denying Defendant's Motion, noting that it conflicted with an intervening

---

[1] ECF Nos. 120 and 122 appear to be identical filings, except that ECF No. 122 includes a certificate of service on the United States Attorney. The court, therefore, **CONSTRUES** the filings as one.

[2] See infra note 3 and accompanying text.

published Fourth Circuit opinion. United States v. Dourdoumis, No. 20-7408, 2021 WL 5492980, at *1 (4th Cir. Nov. 23, 2021) (discussing United States v. Muhammad, 16 F.4th 126 (4th Cir. 2021)). The Mandate issued on December 15, 2021. ECF No. 127. The same day, the court directed the United States to respond to Defendant's Motion. ECF No. 128.[3]

On January 31, 2022, the United States submitted its Response in Opposition. ECF No. 130. It also submitted Defendant's Bureau of Prisons ("BOP") medical records, which were filed under seal. ECF No. 133 ("Medical Records"). Defendant replied to the United States' Response on March 14, 2022. ECF No. 137. Having been fully briefed, Defendant's Motion is now ripe for disposition.

## II. EXHAUSTION OF REMEDIES

Before the court may consider a motion under 18 U.S.C. § 3582(c)(1)(A)(i), the defendant must have "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf," or there must have been a "lapse of 30 days from the receipt of such a request by the warden of the defendant's facility." Id. § 3582(c)(1)(A). The

---

[3] At that time, the court also denied as moot Defendant's Second Motion for Reconsideration. ECF No. 128 at 2. However, as previously explained, "[t]o the extent that this filing provides information which supplements Defendant's Motion for Compassionate Release and supporting documentation, the court will **CONSTRUE** the filing as a Supplemental Motion and consider such information." Id. at 2 n.2.

Fourth Circuit has explained that defendants may satisfy this exhaustion requirement by "wait[ing] 30 days from the date of their initial request to file a motion in the district court," even if the warden has already responded to their request. Muhammad, 16 F.4th at 131 (collecting cases). The court further clarified that the exhaustion requirement "is a non-jurisdictional claim-processing rule," and therefore "may be waived or forfeited." Id. at 130.

Defendant submitted a request for compassionate release to the warden of his institution on June 6, 2020, which was denied on June 30, 2020. ECF No. 130-1 at 1, 3. Because more than thirty (30) days have passed since Defendant made his request, he has satisfied the threshold exhaustion requirement. See 18 U.S.C. § 3582(c)(1)(A).

## III. MERITS OF DEFENDANT'S MOTION

For a court to reduce a defendant's sentence under § 3582(c)(1)(A)(i), it must find that "extraordinary and compelling reasons" justify such a reduction. The defendant bears the burden of showing that this requirement is satisfied. See, e.g., United States v. Newton, 996 F.3d 485, 488 (7th Cir. 2021); United States v. Noel, No. 3:08-cr-186-03, 2021 WL 1602402, at *2 (E.D. Va. Apr. 23, 2021) (Payne, J.). Even if a defendant carries his burden, a court may only reduce his sentence "after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that

4

they are applicable." § 3582(c)(1)(A). Any such reduction must also be "consistent with applicable policy statements issued by the Sentencing Commission." Id.; see United States v. McCoy, 981 F.3d 271, 275-76 (4th Cir. 2020).

In McCoy, the Fourth Circuit held that, in the context of prisoner-filed § 3582(c)(1)(A) motions, "there currently exists no 'applicable policy statement'" because the Commission has not issued a policy statement since the passage of the First Step Act. 981 F.3d at 281-82 (alteration omitted). Therefore, until the Sentencing Commission issues an updated policy statement, "district courts are 'empowered to consider any extraordinary and compelling reason for release that a defendant might raise.'" Id. at 284 (alteration omitted) (quoting United States v. Brooker, 976 F.3d 228, 230 (2d Cir. 2020)); see United States v. Davis, No. 21-6960, 2022 WL 127900, at *1-2 (4th Cir. Jan. 13, 2022) (holding district court abused discretion in determining that certain claims "categorically" could never "establish a sufficient reason for release"). In particular, the Fourth Circuit held that courts "may consider, under the 'extraordinary and compelling reasons' inquiry, that defendants are serving sentences that Congress itself views as dramatically longer than necessary or fair." McCoy, 981 F.3d at 285-86.

Whatever a defendant argues, the overarching purpose of the compassionate release mechanism guides district courts:

> When Congress authorized district courts, as a matter of discretion, to release an inmate from prison based on extraordinary and compelling reasons, it did so to introduce compassion as a factor in assessing ongoing terms of imprisonment, authorizing a district court to give greater weight to an inmate's personal circumstances – when sufficiently extraordinary and compelling – than to society's interests in the defendant's continued incarceration and the finality of judgments.

United States v. Hargrove, --- F.4th ---, 2022 WL 905436, at *6 (4th Cir. 2022). Ultimately, therefore, the court must "balance the severity of the inmate's personal circumstances, on the one hand, against the needs for incarceration, on the other." See id.

Although the policy statement in United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") § 1B1.13 is no longer binding on this court in this case after the Fourth Circuit's decision in McCoy, the court finds that certain of its provisions remain "helpful guidance" in striking this balance. See McCoy, 981 F.3d at 282 n.7. For example, the court will still consider "the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable," U.S.S.G. § 1B1.13, and whether "[t]he defendant is . . . a danger to the safety of any other person or to the community," id. § 1B1.13(2), as these considerations remain highly relevant to whether a reduction in sentence is warranted in this case.

## A. EXTRAORDINARY AND COMPELLING REASONS

Defendant offers three (3) matters which he contends amount to "extraordinary and compelling reasons" for a reduction in sentence pursuant to § 3582(c)(1)(A)(i):

(1) the effect of the ongoing novel coronavirus ("COVID-19") pandemic on his health conditions, see ECF No. 108 at 1-2; ECF No. 122 at 1-2; ECF No. 137 at 2-4, 6;

(2) his rehabilitation while incarcerated, see ECF No. 122 at 2; ECF No. 137 at 7; and

(3) his desire to reunite with his family, see ECF No. 122 at 1-2; ECF No. 137 at 7.

For the reasons explained below, the court finds that none of these issues, individually or in combination, amount to an "extraordinary and compelling reason[]" for a reduction in sentence. See Davis, 2022 WL 127900, at *2 (vacating and remanding denial of compassionate release where there was "no indication that the district court considered [the defendant's] circumstances, as a whole").

## 1. Effect of COVID-19 on Defendant

Defendant submits that the effect of the ongoing COVID-19 pandemic on his health conditions and conditions of incarceration warrants a reduction in sentence. ECF No. 108 at 1-2; ECF No. 122 at 1-2; ECF No. 137 at 2-4, 6. He represents that he suffers from multiple medical conditions that place him at higher risk of serious illness should he contract the virus, and that the BOP is not adequately protecting him from this risk. See ECF No. 108 at

7

1-2; ECF No. 122 at 1-2; ECF No. 137 at 2-4, 6. He also notes that his movement is severely restricted due to COVID-19 mitigation procedures undertaken by the BOP. See ECF No. 122 at 1; ECF No. 137 at 2.

"Fear of COVID doesn't automatically entitle a prisoner to release." United States v. Thompson, 984 F.3d 431, 435 (5th Cir. 2021). Rather, "[i]n the context of the COVID-19 outbreak, courts have found extraordinary and compelling reasons for compassionate release when an inmate shows both a particularized susceptibility to the disease and a particularized risk of contracting the disease at his prison facility." United States v. Feiling, 453 F. Supp. 3d 832, 841 (E.D. Va. 2020) (Novak, J.) (emphasis added); see, e.g., Hargrove, 2022 WL 905436, at *5 (affirming order applying this standard). For the reasons explained below, Defendant fails to cross either of these thresholds.

### i. Particularized Susceptibility

Defendant submits that he has been diagnosed with four conditions that the Centers for Disease Control and Prevention ("CDC") has identified as increasing his risk of severe illness should he contract COVID-19: "Acute Asthma," "Hypertension," "Obesity," and an "immunocompromised state" due to his "use of [prescribed] corticosteroids." See ECF No. 137 at 3. Though the court recognizes that Defendant's conditions could place him at heightened risk of severe illness or death should he contract

8

COVID-19, at this juncture, Defendant does not appear to be particularly susceptible to these adverse outcomes. The court has reviewed the Medical Records submitted by the United States, ECF No. 133, and neither they, nor any other evidence before the court, counsels a sentence reduction.

As a general matter, the BOP appears to be effectively treating Defendant's conditions. Defendant's Medical Records reveal that staff have managed his medical problems as they arose, closely monitored his status, prescribed him medication as needed, and counseled him concerning how to manage his conditions. See, e.g., id. at 1-2 (documenting care for bruised chest on December 8, 2021); id. at 13-17 (noting provider's thorough exam on May 20, 2021, and discussion with Defendant concerning chronic conditions); id. at 41-42 (medications); id. at 32-33 (counseling). Indeed, Defendant has previously complained of several ailments which have resolved under BOP care. See id. at 34-36 (noting current and resolved conditions).

The specific conditions Defendant argues place him at higher risk also fall short of the severity sufficient to justify release. Defendant's asthma appears well-controlled with medications prescribed by BOP staff. See id. at 13 (May 20, 2021, provider notes documenting that Defendant "reported that his asthma is well controlled" and that Defendant "appears to be doing fairly well clinically"). The Medical Records also do not document a diagnosis

for hypertension, though Defendant did recently have an elevated blood pressure reading. See id. at 1 (noting "[e]levated blood-pressure reading, w/o diagnosis of htn" on December 8, 2021); id. at 44 (noting that Defendant denied having hypertension on April 29, 2021). Defendant has also received counseling concerning a "healthy diet" and was "advised to lose weight." Id. at 13. Moreover, other than his obesity making it "difficult for him to bend over and tie his shoes," see id., the record does not suggest that Defendant's conditions prevent him from caring for himself in prison, see ECF No. 130-1 at 3 (denial of request for release noting that Defendant is "capable of performing activities of daily living . . . without assistance" and is "capable of carrying out self-care"); United States v. Mumford, 544 F. Supp. 3d 615, 618 (E.D. Va. 2021) (Smith, J.) (concluding that the defendant's medical conditions amounted to "extraordinary and compelling reasons," in part, because they substantially diminished his ability to care for himself in a correctional setting).

Importantly, Defendant has also received two doses of the highly effective Pfizer-BioNTech COVID-19 vaccine. ECF No. 133 at 40.[4] Though the court recognizes that "breakthrough" infections are possible, despite his medical conditions, Defendant's

---

[4] CDC, Pfizer-BioNTech COVID-19 Vaccine (also known as COMIR NATY): Overview and Safety, https://www.cdc.gov/coronavirus/2019 -ncov/vaccines/different-vaccines/Pfizer-BioNTech.html.

inoculation will vastly decrease his chances of suffering severe complications if he does ultimately become infected in the future. See United States v. Sanders, No. CR SAG-06-087, 2021 WL 1428546, at *3 (D. Md. Apr. 15, 2021) (holding that defendant's "vaccination status remove[d] his other medical conditions from the category of risk constituting an 'extraordinary and compelling reason,'" and collecting cases concluding the same); United States v. Broadfield, 5 F.4th 801, 803 (7th Cir. 2021) ("[F]or the many prisoners who seek release based on the special risks created by COVID-19 for people living in close quarters, vaccines offer relief far more effective than a judicial order.").

BOP staff have also proven themselves capable of quickly addressing a COVID-19 infection should Defendant contract the virus. See ECF No. 133 at 9-11 (documenting testing and monitoring while Defendant remained asymptomatic following exposure to COVID-positive individual). Defendant's purported fears of dying from COVID-19 are also undercut by his failure to seek BOP care, when he believed he was infected with the virus. See id. at 13 (noting that Defendant "thinks that he had COVID-19 in Jan 2021 but he did not inform [BOP medical staff] of his symptoms").

In sum, Defendant has failed to provide sufficient evidence to satisfy the "particularized susceptibility" prong. Instead, "it appears that the conditions on which [Defendant] bases his motion are 'chronic conditions that can be managed in prison [and thus]

11

are not a sufficient basis for compassionate release.'" United
States v. Ferguson, No. 3:04-cr-13-01, 2021 WL 1701918, at *3 (E.D.
Va. Apr. 29, 2021) (Payne, J.) (quoting United States v. Ayon-
Nunez, No. 1:16-cr-130, 2020 WL 704785, at *2-3 (E.D. Cal.
Feb. 12, 2020)); see Hargrove, 2022 WL 905436, at *4-5 (holding
district court did not abuse discretion in finding that a
defendant's evidence of asthma, high blood pressure, and sleep
apnea did not establish extraordinary and compelling reasons).

### ii. Particularized Risk

Defendant argues that the conditions at his facility, FCI
Williamsburg, warrant his release. See ECF No. 108 at 1-2; ECF No.
122 at 1-2; ECF No. 137 at 4. He submits that the BOP's "response
has been inadequate and futile to confront" COVID-19, ECF No. 108
at 1-2, and represents that his movement has been severely
restricted, ECF No. 122 at 1. He argues that he "was not sentenced
to a death sentence and fear[s] that is what will happen if [he]
catch[es] COVID-19 in prison." Id. at 2. In his Reply, Defendant
represents that, as of January 2022, there was a significant (and
rising) number of infected inmates and staff members at his
institution. See ECF No. 137 at 4. Though prisoners and staff
members at FCI Williamsburg have been infected with COVID-19 in
the past, Defendant fails to demonstrate that he now faces a
particularized risk of contracting COVID-19 at his facility.

12

A large number of inmates and staff at FCI Williamsburg have been inoculated against COVID-19 with vaccines shown to be effective[5] at preventing serious COVID-19 illness.[6] And as of May 6, 2022, FCI Williamsburg had zero (0) active cases of COVID-19 among inmates and staff members.[7] These numbers leave the court unconvinced that residing in Virginia Beach, as Defendant plans should he be released, see ECF No. 108 at 2, would afford him significantly more protection than remaining at his institution,[8] where the BOP is actively managing operations to minimize the spread of COVID-19. See Feiling, 453 F. Supp. 3d at 841-42 (denying motion for compassionate release where defendant "fail[ed] to demonstrate how his release on home confinement [would] significantly reduce his likelihood of contracting COVID-19").

Ultimately, the court finds that the low prevalence of COVID-19 at Defendant's facility, particularly in light of the

---

[5]  CDC, Benefits of Getting a COVID-19 Vaccine, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/vaccine-benefits.html.

[6] As of May 6, 2022, full inoculations were completed for 236 staff members and 1,553 prisoners at FCI Williamsburg. BOP, COVID-19 Vaccine Implementation, https://www.bop.gov/coronavirus/.

[7] BOP, COVID-19 Cases, https://www.bop.gov/coronavirus/.

[8] As of May 6, 2022, 69.9% of Virginia Beach residents were fully vaccinated against COVID-19. Va. Dep't of Health, COVID-19 Vaccine Summary, https://www.vdh.virginia.gov/coronavirus/see-the-numbers/covid-19-in-virginia/covid-19-vaccine-summary/.

BOP's ongoing vaccination and mitigation efforts,[9] does not subject Defendant to a particularized risk of contracting the virus. See, e.g., United States v. Spencer, 521 F. Supp. 3d 606, 612 (E.D. Va. 2021) (Smith, J.) (denying motion where the defendant's facility had only two (2) active COVID-19 cases among inmates). Though the court sympathizes with Defendant's frustration concerning his restricted movement, this is something that the entire population - incarcerated or not - has endured throughout the pandemic in one form or another.

Thus, Defendant has not demonstrated a particularized susceptibility to COVID-19, or that he faces a particularized risk of contracting the virus at FCI Williamsburg, and therefore has not shown extraordinary or compelling reasons justifying a sentence reduction on this basis.

### 2. Rehabilitation and Other Post-Conviction Conduct

Defendant argues that his post-conviction conduct justifies a sentence reduction under § 3582(c)(1)(A)(i). See ECF No. 122 at 2; ECF No. 137 at 7. He assures the court that he "will not be a statistic and violate or return to prison," and promises to be an "upstanding citizen and a great example to [his] peers." ECF

---

[9] BOP, FCI Williamsburg, https://www.bop.gov/locations/insti tutions/wil/ (noting modifications to prison operations due to COVID-19); BOP, COVID-19 Modified Operations Plan & Matrix, https://www.bop.gov/coronavirus/covid19_modified_operations_guid e.jsp (describing modifications).

No. 122 at 2. Though Defendant concedes that "he has been cited with several disciplinary infractions," he represents that "he has completed 27 educational programs which equates to over 300 hours of programming." ECF No. 137 at 7.

The court first notes that rehabilitation, alone, does not constitute an "extraordinary and compelling reason" for a reduction in sentence. 28 U.S.C. § 994(t). But the court recognizes that it may consider rehabilitation and other post-conviction conduct, when paired with other factors, as an "extraordinary and compelling reason[]" for relief. 18 U.S.C. § 3582(c)(1)(A)(i); see also Davis, 2022 WL 127900, at *1 ("successful rehabilitation efforts can be considered as 'one among other factors'" (quoting McCoy, 981 F.3d at 286 n.9)). On these facts, however, Defendant's rehabilitation argument does not articulate an extraordinary or compelling reason for a reduction in sentence in light of the full considerations herein of other matters raised by Defendant and the factors under 18 U.S.C. § 3553(a).[10]

While the court accepts Defendant's representation concerning prison coursework, and commends him for taking the steps he has to improve himself, these steps are not "extraordinary." Instead, it appears to the court that Defendant has, at best, simply "do[ne] the things that prisoners are supposed to do" while incarcerated.

---

[10] See infra Part III.B.

United States v. Logan, 532 F. Supp. 3d 725, 735 (D. Minn. 2021) ("Prisoners are supposed to follow the rules, take classes, work at a job, and otherwise attempt to improve themselves. That a prisoner does so means that he has met baseline expectations, not that he has done something extraordinary.").

However, it is not entirely clear that Defendant has even satisfied this baseline expectation. The court notes that Defendant has committed serious institutional infractions, even as recently as 2021. See ECF No. 130-3 (disciplinary record noting the following infractions: disruptive conduct (2021); use of drugs/alcohol (2018); disruptive conduct (threatening a staff member) (2016); use of drugs/alcohol (2015); use of drugs/alcohol (2014); phone abuse (disrupt monitoring) (2014)). On this record, the court finds that Defendant's post-conviction conduct, in combination with the other reasons offered, does not warrant a reduction in sentence.

### 3. Desire to Be with Family

Under Application Note 1(C) to U.S.S.G. § 1B1.13, extraordinary and compelling reasons for a reduction in sentence exist only upon "[t]he death or incapacitation of the caregiver of the defendant's minor child or minor children" or "[t]he incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner." After McCoy, however, the court

16

finds that, as a general matter, a defendant's desire to reunite with family for reasons other than those outlined in § 1B1.13 could constitute an extraordinary and compelling reason for release. See United States v. Hankins, No. 2:12-cr-182, slip op. at 4-5 (E.D. Va. Mar. 16, 2021) (Smith, J.) (addressing potential for family circumstances to constitute "extraordinary and compelling reasons"). Still, Defendant's argument does not articulate an extraordinary or compelling reason for a reduction in sentence in this particular case. See United States v. Davis, --- F Supp. 3d ---, 2022 WL 220872, at *9 (E.D. Va. 2022) (Smith, J.) (reaching the same conclusion).

Defendant asks that the court reduce his sentence so that he can reunite with and support his family. ECF No. 122 at 1-2; ECF No. 137 at 7. He explains that his family members need him because they "are on the verge of losing [their] family owned restaurants" due Defendant's parents' age and medical conditions. ECF No. 122 at 1-2. He also explains that his uncle who "runs one of the restaurants with the family can't work any longer" due to his medical conditions. See id. at 2. Defendant submits that "being home would ease a lot of things on [his] elder parents, and their lives, and [his] family would not have to worry about losing the businesses [his] parents worked so hard to build up for [his] sisters and [him] and [their] families." Id.

17

The court accepts Defendant's representations, but finds that they do not justify a reduction in sentence. To start, Defendant does little to explain why exactly he is needed to care for family members or assist them with the family businesses.[11] Though his release may very well "ease a lot of things" for his family, id., Defendant has three sisters who live in the area who could help their family members. ECF No. 129 ("Presentence Investigation Report" ("PSR")) ¶ 41.[12] Indeed, at the time the PSR was produced, two of his sisters were working at family restaurants, illustrating their ability to help with the family businesses. See id. Defendant also does not argue that his children lack a suitable caregiver. See PSR ¶ 42 (noting that Defendant's children live with his wife).

Unfortunately, the hardships Defendant identifies are hardly uncommon following a family member's commission of a serious crime

---

[11] The court also observes that Defendant was believed to have involved at least one of his family's businesses in the cocaine distribution that led to his arrest. See PSR ¶¶ 14-15. While employed at one of his parents' restaurants, law enforcement "observed [Defendant] leaving [the] business on his way to the [drug] transactions with the confidential informant." PSR ¶ 14. This resulted in agents executing a search warrant at the business the same day that Defendant was arrested. See id. "Subsequent to his arrest for the instant offense, and after he was advised of his rights, [Defendant also] voluntarily told the investigators that . . . after delivering the cocaine he planned to go to one of his parents' restaurants and separate his profits from the money he owed his supplier." PSR ¶ 15.

[12] Defendant does not argue that this has changed during his incarceration and references his sisters in at least one of his submissions. See ECF No. 122 at 2.

and subsequent incarceration. He, therefore, does not describe an "unusual set of facts" that compel this court to reduce his sentence. See Extraordinary Circumstances, Black's Law Dictionary (9th ed. 2009) (defining "extraordinary circumstances" as follows: "A highly unusual set of facts that are not commonly associated with a particular thing or event."). The incremental assistance Defendant may provide his family members does not outweigh the public's continued interest in his incarceration. See Hargrove, 2022 WL 905436, at *6. The court, therefore, finds that Defendant does not articulate an "extraordinary and compelling" reason for a sentence reduction under § 3582(c)(1)(A)(i). See Tucker v. United States, No. 2:17-cr-87, 2020 WL 4740480, at *3 (E.D. Va. Aug. 14, 2020) (Jackson, J.) (finding Defendant's "subjective desire to raise her son," alone did not justify sentence reduction).

In sum, none of the three issues raised by Defendant, individually or in combination, amount to the "extraordinary and compelling reasons" required to justify a reduction in sentence under § 3582(c)(1)(A)(i).

## B. SECTION 3553(a) FACTORS

A court may only reduce a defendant's sentence under § 3582(c)(1)(A) "after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable . . . ." 18 U.S.C. § 3582(c)(1)(A). That said, "[s]ection 3582(c)(1) permits a district court to reduce a sentence in 'any case' – not just cases where a sentence has been substantially served; not just in cases involving low-level or non-violent offenses." Kibble, 992 F.3d at 334 (Gregory, C.J., concurring) (citing United States v. Gonzales, 520 U.S. 1, 5 (1997)). Even if Defendant had presented "extraordinary and compelling reasons," the court finds that a reduction in sentence would not be proper in this case, as the § 3553(a) factors weigh heavily against Defendant's release. See Kibble, 992 F.3d at 330, 332 (majority opinion affirming denial of a motion for compassionate release where the defendant's "health conditions . . . amounted to extraordinary and compelling circumstances," but "the § 3553(a) factors counseled against a sentence reduction").

The court acknowledges and credits Defendant's representation concerning his completed coursework, and hopes that Defendant's aspirations for improvement bode well for a successful term of supervised release.[13] The court is also aware that Defendant has

---

[13] See supra Part III.A.2. (discussing Defendant's post-conviction conduct).

served roughly 90% of his sentence, and is scheduled for release in July 2023. Kibble, 992 F.3d at 331 (recognizing that district courts are "entitled to consider the amount of time [defendants] ha[ve] served as one factor in the § 3553(a) analysis" and citing United States v. Chambliss, 948 F.3d 691, 694 (5th Cir. 2020) and United States v. Pawlowski, 967 F.3d 327, 331 (3d Cir. 2020)). Nevertheless, Defendant's steps towards rehabilitation, and proximity to his scheduled release date, do not overcome the seriousness of his offense conduct and the other § 3553(a) considerations counseling against his release.

Defendant's convictions stem from his distribution of dangerous drugs and unlawful possession a firearm. See PSR ¶¶ 5-20; ECF No. 15 ("Statement of Facts" ("SOF")). Law enforcement began to investigate Defendant's drug trafficking in May 2010. A confidential informant ("CI") subsequently purchased cocaine from Defendant on three (3) occasions. As Defendant drove to complete a fourth transaction with the CI, officers stopped his vehicle, and a search of the car revealed a sizeable quantity of cocaine. When officers searched Defendant's home the same day, they discovered a Glock handgun, ammunition, and drug packaging materials. Defendant ultimately admitted that the firearm was his, and that he kept it for protection. He also explained that the day before his arrest, he purchased four (4) ounces of cocaine, had already sold an ounce to someone, and intended to sell the

21

rest to someone else. Defendant was ultimately attributed with 221.45 grams of cocaine for sentencing purposes.

This conduct is particularly troubling considering Defendant's prior criminal history. Indeed, Defendant's instant offenses were not his first concerning the distribution of dangerous drugs and unlawful possession of a firearm. His earlier convictions include the following:

- unlawful wounding (1998), PSR ¶ 26;
- possession of a firearm by a convicted felon (2001), id. ¶ 27;
- conspiracy to distribute cocaine (1999), id. ¶ 28; and
- contempt of court (2000), id. ¶ 29.

Due to his substantial criminal history, Defendant had a criminal history category of VI and was assigned a career offender enhancement at sentencing pursuant to U.S.S.G. § 4B1.1(a). PSR ¶¶ 37, 72.

The court also notes that Defendant previously violated the terms of his state and federal court supervision. See id. ¶¶ 26-29. While on pretrial release relating to his 2001 federal firearm conviction, he sustained his conspiracy to distribute cocaine charge, resulting in his contempt of court conviction. See id. ¶¶ 27-29. The court also notes that his prior firearm conviction stemmed from his possession of a stolen handgun with an obliterated serial number. See id. ¶ 27. Though Defendant subsequently adjusted well to the terms of his federal supervised release,

id. ¶¶ 27, 29, his commission of the instant offenses - less than two years after the court terminated his federal supervised release - illustrated his continued disregard for the law.

Defendant's serious offense conduct, pre-offense criminal history, and unimpressive record of post-conviction conduct, collectively satisfy the court that the sentence originally imposed by the court is necessary "to reflect the seriousness of the offense, to promote respect for the law," "to afford adequate deterrence to criminal conduct," and, most importantly, "to protect the public from further crimes of the [D]efendant." 18 U.S.C. § 3553(a)(2)(A)-(C) (emphasis added). For the same reasons, Defendant's thirteen (13) year prison sentence, which fell near the low end of the advisory Guidelines range, is not unduly harsh when compared to the sentences of similarly situated Defendants. See id. § 3553(a)(6); PSR Part D (p. 23). In sum, his sentence remains "sufficient, but not greater than necessary," to achieve the aims of 18 U.S.C. § 3553(a).

## IV. CONCLUSION

Based on the foregoing, and having considered the effect of McCoy on Defendant's sentence, all the factors under 18 U.S.C. § 3553(a), and Defendant's offense conduct, criminal history, age at the time of the offense, and rehabilitation while incarcerated, Defendant's Motion for Compassionate Release, ECF No. 108, is

**DENIED**. The Judgment entered on September 27, 2011, ECF No. 29, remains in full force and effect.

The Clerk is **DIRECTED** to forward a copy of this Opinion to Defendant, the United States Attorney at Norfolk, and the BOP.

IT IS SO ORDERED.

/s/
Rebecca Beach Smith
Senior United States District Judge
_____
REBECCA BEACH SMITH
SENIOR UNITED STATES DISTRICT JUDGE

May 6, 2022

24